UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
AHMAD ISMAEL IBRAHIM and MOHAMMED TAHIR,

                    Plaintiffs,

  against

NASSAU COUNTY, T20 WORLD CUP USA INC., GARDAWORLD SECURITY SERVICES MANAGEMENT COMPANY, INC., JOHN DOE #1-4, JANE DOE, and GEORGE DOE #1-3,

                    Defendants.
----------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
24-CV-4888(EK)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this civil rights action brought pursuant to 42 U.S.C. § 1983, on referral for decision from the Honorable Eric Komitee, is Defendant T20 World Cup USA Inc.'s ("T20") Motion to Compel Arbitration.[1] *See* Docket Entry ("DE") [34]. Plaintiffs Ahmad Ismael Ibrahim ("Ibrahim") and Mohammad Tahir ("Tahir" and, together, "Plaintiffs") oppose the motion. DE [34-13]. For the reasons set forth below, the Motion to Compel Arbitration is granted and this action is stayed.

**I.   BACKGROUND**

    **A.   Facts**

         1.   The Parties and the T20 Tournament

In the summer of 2024, the International Cricket Counsel held a cricket tournament known as the "T20" in Nassau County, New York (the "T20

---

[1] Although the motion seeks the alternative relief of dismissal of the Amended Complaint, only the portion of the motion seeking to compel arbitration is before this Court.

1

Tournament"). *See* Amended Complaint ("Am. Compl."), DE [29], ¶ 15. The tournament includes "20 national teams, one from each participating country." *Id.* at ¶ 14. Plaintiffs allege that, "[t]he events are filled with national pride, rivalry and comradery, where attendees bring and display national flags and proudly declare their affinity for various nations and teams." *Id.* Defendant T20 "is the entity established in the United States to deliver the T20 [Tournament]." *Id.* at ¶ 8. Defendant Gardaworld Security Services Management Company, Inc. ("Gardaworld") is a "private security company contracted . . . to provide security services" at the T20 Tournament. *Id.* at ¶ 9. Defendant Nassau County (the "County") is a municipal entity that is authorized by law to maintain a police department, which "acts as its agent in law enforcement," and for which "the County is ultimately responsible." *Id.* at ¶ 8.

Plaintiffs are two individuals who attended the T20 Tournament on June 10, 2024 and June 11, 2024. *Id.* at ¶¶ 6-7, 31, 56. On June 10, 2024, Ibrahim attended a match between Bangladesh and South Africa. *Id.* at ¶¶ 31-35. While entering the venue, security confiscated a Palestinian flag that he brought to display. *Id.* at ¶¶ 44-45. Ibrahim entered the venue and began a "call-and-response" chant stating "free Palestine," to which other patrons responded. *Id.* at ¶ 46. As a result, Ibrahim was arrested for trespass and disorderly conduct. *Id.* at ¶¶ 47-54. On June 11, 2024, Tahir attended a match between Pakistan and Canada. *Id.* at ¶ 56. During the match, Tahir attempted to assist fellow patrons in displaying a Palestinian flag from their seats, but was prevented from doing so by a Gardaworld security officer. *Id.* at

2

¶¶ 57-58. Tahir was not ejected, arrested, or otherwise addressed by security. *Id.* Although Plaintiffs state that "large banners and flags" were prohibited, they allege that "only large Palestinian flags were barred" and that the "flags of scores of other nations were proudly displayed by attendees and permitted by police, security officers, and the T20." *Id.* at ¶¶ 17-18.

### 2. Plaintiffs' Tickets to the T20 Tournament

Tickets to the T20 Tournament were exclusively sold electronically. *See* Declaration of Brett Jones ("Jones Decl."), DE [34-3], ¶¶ 5-6. Both Plaintiffs used mobile tickets to enter the T20 Tournament matches they attended. *See* Declaration of Ahmad Ismael Ibrahim ("Ibrahim Decl."), DE [34-18], at ¶ 7; Declaration of Mohammad Tahir ("Tahir Decl."), DE [34-19], at ¶¶ 3-4. T20's mobile app was the "only way to enter the Event with a mobile ticket." Jones Decl. ¶¶ 8, 15. Ticket purchasers were required to "check a box affirming that they had read and agreed to the ticket terms" and it was impossible to purchase tickets without affirmatively assenting to the Terms and Conditions. *Id.* at ¶¶ 7-8, 16-17. Likewise, when creating an account on T20's mobile app, users are "required to agree to the following statement by toggling a button: 'I confirm that I have read, accepted and agree to the terms and conditions and Privacy Policy.'" *Id.* at ¶¶ 16-17. Upon clicking the corresponding "Terms and Conditions" hyperlink, the user is presented with the arbitration agreement that forms the basis of this motion (the "Arbitration Agreement"). *Id.* at Ex. A. In bold, capitalized font, the Arbitration Agreement states:

3

> **THIS PURCHASE POLICY INCLUDES AN AGREEMENT TO MANDATORY ARBITRATION, WHICH MEANS THAT YOU AGREE TO SUBMIT ANY DISPUTE RELATED TO THE PURCHASE POLICY TO BINDING INDIVIDUAL ARBITRATION RATHER THAN PROCEEDING IN COURT. IF YOU WANT TO OPT-OUT OF THIS MANDATORY ARBITRATION AGREEMENT, THE DISPUTE RESOLUTION/ARBITRATION PROVISION BELOW DESCRIBES THE PROCEDURES YOU MUST FOLLOW TO DO SO. THE DISPUTE RESOLUTION/ARBITRATION PROVISION ALSO INCLUDES A CLASS ACTION WAIVER, WHICH MEANS THAT YOU AGREE TO PROCEED WITH ANY DISPUTE INDIVIDUALY AND NOT AS PART OF A CLASS ACTION. THIS AGREEMENT ALSO INCLUDES A JURY WAIVER.**

*Id.* The Terms and Conditions also state that "T20 USA, and the venue hosting the match each reserve the right, without refund of any amount paid, to refuse admission to, or eject, any person whose conduct management deems disorderly, who uses vulgar or abusive language, *or who fails to comply with Venue Rules*." *Id.* at Ex. B (emphasis added). Relevant here, the Venue Rules prohibit:

> Any conduct or attire (including caps, face coverings, etc.) that includes any content (such as words, photos, drawings, artwork, or other designs) deemed by T20 USA in its sole discretion to be obscene, profane, vulgar, indecent, violent, threatening, abusive, prejudiced against any individual or group (e.g., because of their race, religion, or sexual orientation), or which encourages or promotes illegal behavior . . . .

*Id.* The Venue Rules further provide, among other things, "Signs or banners may not block another guest's view, may not be affixed or hung from any stadium structure, and must otherwise comply with posted size restrictions." *Id.* This includes "banners, large costumes/headwear, or flags." *Id.* Relevant here, the Venue Rules also state that "items may not be hung over the railing[s]" and that "signs and clothing unrelated to the Event, offensive, profane, political, commercial in nature, or otherwise deemed dangerous or inappropriate" are prohibited. *Id.*

4

Neither Ibrahim nor Tahir purchased his own ticket to the T20 Tournament. *Id.* at ¶¶ 13-14. Ibrahim's brother, Ishaq Ibrahim ("Ishaq"), purchased tickets for himself and Ibrahim, and Ibrahim denies ever actually possessing his ticket or reading the Terms and Conditions. *Id.* at ¶ 13; Ibrahim Decl. ¶¶ 4-8; Declaration of Ishaq Ibrahim ("Ishaq Decl."), DE [34-17], ¶ 2. Ishaq purchased the ticket on T20's "purchasing website" but used T20's mobile app to gain entry for himself and Ibrahim to the event. *See* Ishaq Decl. ¶¶ 3, 6. Tahir "was gifted a ticket by a player and accessed the ticket and gained entry to the Event via the App." Jones Decl. ¶ 14; Tahir Decl. ¶ 2. Although Tahir used his own phone to access his ticket and enter the venue, *see* Tahir Decl. ¶ 3, he denies that he ever saw or reviewed the Arbitration Agreement. *Id.* at ¶ 4.

B. **Procedural Background**

By way of a Complaint filed on July 15, 2024, Plaintiffs commenced this action against Defendants T20, Nassau County, Gardaworld, John Does #1-4, Jane Doe, and George Does #1-3. DE [1]. On October 18, 2024, Plaintiffs filed an Amended Complaint against all Defendants, which is the operative pleading in this action. DE [29]. Both Plaintiffs assert causes of action for violation of their First Amendment rights and "New York State Constitutional Tort." Am. Compl. ¶¶ 76-82, 97-99. Ibrahim asserts additional causes of action for false arrest in violation of both federal law and state common law, as well as malicious prosecution. *Id.* at ¶¶ 83-96. Plaintiffs assert their claims on behalf of themselves and a putative class of plaintiffs that includes "all persons who were barred from displaying a Palestinian flag at the

5

T20 [Tournament] in Nassau County, New York, or who were prevented from viewing a Palestinian flag at the T20 [Tournament] in Nassau County, New York . . . ." *Id.* at ¶ 61.

On December 13, 2024, T20 filed the instant motion to compel arbitration or, in the alternative, to partially dismiss Plaintiffs' Amended Complaint.[2] DE [34]. T20 asserts that the Arbitration Agreement requires that Plaintiffs pursue their claims in arbitration as opposed to in this Court. *See* Defendant T20's Memorandum in Support of Motion to Compel Arbitration ("T20's Mem."), DE [34-1], at 7-16. T20 seeks to stay this action pending arbitration. *Id.* at 1, 13-16. In opposition, Plaintiffs argue that: (1) the Arbitration Agreement was not sufficiently conspicuous, (2) they are not bound by the Arbitration Agreement because they did not purchase the tickets, and (3) their Section 1983 claims are not subject to arbitration. *See* Plaintiffs' Opposition to Defendant T20's Motion to Compel Arbitration ("Pls.' Opp'n"), DE [34-13], at 6-16. Plaintiffs' arguments are without merit.

## II.   LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), "a written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Collazos v. Garda CL Atl., Inc.*, 666 F. Supp. 3d 249, 260

---

[2] Gardaworld and Nassau County have also filed motions to dismiss, DE [33], [35], which are held in abeyance pending resolution of the motion to compel arbitration. *See* Electronic Order dated Dec. 24, 2024. As stated above, the instant Memorandum and Order only addresses the portion of T20's motion seeking to compel arbitration.

6

(E.D.N.Y. 2023) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 943 (1983)); *Hobby Lobby Stores, Inc. v. Christie's Inc.*, 535 F. Supp. 3d 113, 121 (E.D.N.Y. 2021) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). Arbitration agreements "are a matter of contract" and, "[w]hen enforcing an arbitration agreement, as with any other contract, the parties' intentions control." *Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 533-34 (E.D.N.Y. 2016). Accordingly, "[i]n deciding whether a dispute is arbitrable, [the Court] must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015).

### III. DISCUSSION

#### A. All Parties are Subject to the Arbitration Agreement

##### 1. The Arbitration Agreement Applies to All Defendants

Only T20 issued the tickets at issue – neither Nassau County nor Gardaworld had an explicit agreement to arbitrate the claims at issue. *See* Jones Decl. Exs. A, B, E, F. While T20 moves to compel arbitration of all of Plaintiffs' claims, *see* T20's Mem. at 13-16, Plaintiffs claim that "only T20 is subject to arbitration," and that any non-arbitrable claims should be severed and proceed in this Court. *See* Pls.' Opp'n at 16. The Arbitration Agreement applies to all Defendants.

An agreement to arbitrate with one party will constitute an implied agreement to arbitrate with a non-party "provided that two pre-conditions are true: (1) that 'the relationships among the parties developed in a manner that made it unfair'" for the

7

party to claim that its agreement to arbitrate did not apply to related parties; and (2) that "the subject matter of the dispute was intertwined with the contract providing for arbitration." *Green v. XPO Last Mile, Inc.*, 504 F. Supp. 3d 60, 70 (D. Conn. 2020) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008)). Accordingly, non-parties to an arbitration agreement will be compelled to arbitrate where "there is a 'relationship' between the defendants and the counter-party to the arbitration agreement such that a court could conclude that the plaintiff 'had consented to extend its agreement to arbitrate' to the non-party defendants." *Hird v. iMergent, Inc.*, No. 10 Civ. 166(DLC), 2011 WL 43529, at *3 (S.D.N.Y. Jan. 6, 2011) (quoting *Sokol Holdings, Inc.*, 542 F.3d at 361).

Plaintiffs' allegations establish that, if their claims against T20 are subject to arbitration, their claims against the remaining Defendants are arbitrable as well. Plaintiffs allege that "Nassau County played a significant role in planning and producing the T20 [Tournament]" and that "[t]he T20, Gardaworld and Nassau County entered into an agreement to work together to erect a . . . cricket stadium on public Nassau County public parkland . . . ." Am. Compl. ¶ 16.  Likewise, all Defendants "worked together to promulgate and publicize rules and regulations concerning the T20 [Tournament]." *Id.* at ¶ 17.  Plaintiffs further allege that all Defendants "worked together and formed an agreement and policies and procedures" to address the conduct that forms the bases of Plaintiff's allegations, including that they "worked hand in hand to enforce the unconstitutional ban on Palestinian flags." *Id.* at ¶¶ 19, 26.  These allegations are sufficient to consider the question of

8

arbitrability with respect to all Defendants. *Sokol Holdings, Inc.* 542 F.3d. at 358 ("[U]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute."); *Kwik Ticket Inc. by Shamah v. Spiewak*, No. 20-CV-1201(FB), 2022 WL 3446316, at *3 (E.D.N.Y. Aug. 17, 2022) (granting motion to compel arbitration where the alleged conduct was "necessarily intertwined"); *Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 456 (E.D.N.Y. 2019) (enforcing arbitration agreement where the allegations against a non-party were "identical to those against [the signatory] and the two entities ha[d] a close operating relationship"); *Hird*, 2011 WL 43529, at *3 (compelling arbitration where "[a]ll of the plaintiff's claims [arose] out of the plaintiff's relationship with [the signatory]").

2. Plaintiffs are Bound by the Arbitration Agreement

Plaintiffs dispute that they are bound by the Arbitration Agreement because they did not personally purchase their tickets to the T20 Tournament. *See* Pls.' Opp'n at 15. Ibrahim's brother purchased a ticket for himself and Ibrahim and used his phone to present the tickets to gain entry to the T20 Tournament. Am. Compl. ¶ 18; Ibrahim Decl. ¶¶ 4, 7-10. Likewise, a player in the T20 Tournament "gifted" Tahir a ticket. Jones Decl. ¶ 14; Tahir Decl. ¶¶ 2, 4-6. Nevertheless, both are bound by the terms of the Arbitration Agreement.

A ticket may constitute a contract "even when the purchaser neither purchases nor sees the ticket." *Palmer v. Norwegian Cruise Line & Norwegian Spirit*, 741 F. Supp. 2d 405, 411 (E.D.N.Y. 2010); *see Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d

9

254, 258 (E.D.N.Y. 2019) (granting motion to compel arbitration where a husband used his wife's online account that was subject to an arbitration clause to purchase an item the husband alleged caused him injury); *Foster v. Cunard White Star*, 121 F.2d 12, 13 (2d Cir. 1941) (holding that the plaintiff accepted a ticket and had notice of its terms even where the plaintiff's brother purchased and held the tickets). Courts in other Circuits have reached a similar conclusion. *See, e.g.*, *Jackson v. World Wrestling Entm't, Inc.*, No. 4:23-CV-0172-P, 2023 WL 3326115, at *4 (N.D. Tex. May 9, 2023) ("[A]n attendee of an event who takes advantage of the ticket but chooses to forego the opportunity to review the terms of the ticket by leaving it in the hands of his agent is charged with knowledge of its terms."); *Roberts v. Carnival Corp.*, No. 19-CV-32885(BB) 2022 WL 834905, at *8 (S.D. Fla. Mar. 21, 2022) (holding that the plaintiff accepted a ticket and had notice of a requirement to arbitrate even where the plaintiff's sister booked tickets for a group).

Applying these standards, both Ibrahim and Tahir are bound by the Arbitration Agreement. Although they did not personally purchase their tickets, they gained access to the T20 Tournament – either individually or via someone acting on his behalf – in a manner that required assent to the Arbitration Agreement. *See* Tahir Decl. ¶ 2; Ibrahim Decl. ¶¶ 4-8. This is sufficient to establish that they are both subject to the Arbitration Agreement. *Palmer*, 741 F. Supp. 2d at 411; *Nicosia*, 384 F. Supp. 3d at 258. Accordingly, the Arbitration Agreement applies to all parties in this action.

10

## B.     Plaintiffs' Claims are Subject to the Arbitration Agreement

Having concluded that the Arbitration Agreement applies to all parties, the Court considers whether Plaintiffs' claims fall within the terms of the Arbitration Agreement.  Relevant here, "[a] 'clickwrap' or 'click-through' agreement 'requires users to click an 'I agree' box after being presented with a list of terms and conditions of use.'" *Peiran Zheng v. Live Auctioneers LLC,* No. 20-CV-9744(JGK), 2021 WL 2043562, at *4 (S.D.N.Y. May 21, 2021) (quoting *Meyer v. Uber Techs.*, 868 F.3d 66, 75 (2d Cir. 2017)).  To be bound by a clickwrap agreement, "the web user must have 'reasonable notice of the arbitration provision.'" *Pieran Zheng*, 2021 WL 2043562, at *4 (quoting *Starke v. Square Trade, Inc.*, 913 F.3d 279, 292 (2d Cir. 2019)); *see Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 47 (E.D.N.Y. 2017) ("[I]n the context of agreements made over the internet, New York courts find that binding contracts are made when the user takes some action demonstrating that [she has] at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance.")  (citing *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010)).

In evaluating whether a user had adequate notice and assented to the terms of an arbitration agreement, courts "look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in a way that would put [the offeree] on inquiry notice of such terms." *Teta v. Go New York Tours, Inc.*, 738 F. Supp. 3d 502, 509 (S.D.N.Y. 2024) (quoting *Starke*, 913 F.3d at 289).  A party will be bound to an arbitration agreement if he has "sufficient opportunity to read the . . . agreement, and assents thereto after being provided with

11

an unambiguous method of accepting or declining the offer." *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 164 (E.D.N.Y. 2012); *see Whitt v. Prosper Funding LLC*, No. 15-CV-136(GHW), 2015 WL 4254062, at *4 (S.D.N.Y. July 14, 2015) (holding that constructive knowledge is established when a user "affirmatively click[s] a box on [a] website acknowledging awareness and agreement to the terms of [a contract] before . . . [being] allowed to proceed with further utilization of the website") (quoting *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015)).

### 1. The Arbitration Agreement was Conspicuous

Plaintiffs assert that neither the purchasing website, the ticketing app, nor the physical signs posted at the entrance to the T20 Tournament provided adequate notice of the Arbitration Agreement. Pls.' Opp'n at 4. They claim that the purchasing website is "a riot of confusing colors and distracting and misleading promotional links providing anything but clear and conspicuous notice."[3] *Id.* at 4-5. They further assert that the ticketing app "requires a lawyerly drill down through multiple links before arriving at an impasse where none of the options . . . lead to the arbitration clause." *Id.* at 5. Finally, they claim that the signage outside of the stadium failed to provide adequate notice of the Arbitration Agreement.[4] *Id.* Plaintiffs' arguments regarding the adequacy of notice of the Arbitration Agreement are unavailing.

---

[3] Although Ishaq asserts that he purchased the ticket for Ibrahim on T20's "purchasing website," *see* Ishaq Decl. ¶ 3, he downloaded and used the T20 mobile app to gain entry for him and his brother. *Id.* at ¶ 6. Likewise, Tahir used T20's mobile app to gain entry. *See* Ibrahim Decl. ¶ 7; Tahir Decl. ¶ 3; Ishaq Decl. ¶ 6.

[4] Defendants assert that physical signs affixed to a fence outside the venue included a web address to the link to the Terms and Conditions, thereby providing adequate notice of the Arbitration Agreement. Jones Decl. ¶ 22, Ex. H. It is implausible that a patron entering a sporting event, after having already purchased a ticket, would visit a website prior to entering the venue to confirm his rights or obligations

When registering for an account to use the T20 mobile app, which was relied upon by both Plaintiffs to gain entry to the T20 Tournament, *see* Tahir Decl. ¶ 3, Ibrahim Decl. ¶ 7, a user must affirmatively consent to the Terms and Conditions, which contain the Arbitration Agreement. *See* Jones Decl. Exs. A, E. Specifically, the user must click a "toggle button" located directly next to a statement that reads "I confirm I have read, accepted and agree to the Terms and Conditions and Privacy Policy." *Id.* at Ex. E. Directly below this, in a distinctive red font below, is a warning that "Consent is required." *Id.* The phrases "Terms and Conditions" and "Privacy Policy" contain distinct hyperlinks that take the user to the corresponding agreement. *Id.* By clicking the "Terms and Conditions" hyperlink, the user arrives at a webpage containing the Arbitration Agreement. *Id.* at Ex. A. The Arbitration Agreement appears near the top of the webpage in bold, capital letters. *Id.* Moreover, the Arbitration Agreement conspicuously states that the user is bound by the Venue Rules providing for ejection from the venue for various forms of behavior. *Id.*

Ibrahim's and Tahir's denials that they clicked on the Terms and Conditions such that they would be unaware of the Arbitration Agreement, *see* Tahir Decl. ¶ 4; Ibrahim Decl. ¶¶ 8-10, are immaterial. *See Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 831 (S.D.N.Y. 2020) ("Whether [the plaintiff] actually clicked on the hyperlink to read the TOS or the Privacy Policy is immaterial; what matters is that notice of these terms was reasonably conspicuous."); *Lewis v. Samsung Elecs. Am., Inc.*, No.

---

regarding unanticipated legal action. Accordingly, the signs outside the venue have no impact on the Court's conclusion.

13

22-CV-10882(JLR), 2023 WL 7623670, at *9 (S.D.N.Y. Nov. 14, 2023) ("While it may be the case that many users will not bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice.") (citing *Meyer*, 868 F.3d at 79). Likewise, although the initial recipients of the tickets, whether purchased or gifted, may not have been presented with the terms of the Arbitration Agreement on the same page on which they either created their T20 mobile app account or purchased their tickets, by providing a conspicuous hyperlink that brought them to the Arbitration Agreement, T20 provided adequate notice. *See Meyer*, 868 F.3d at 80 (holding that providing a hyperlink was sufficient to establish that "the user was agreeing to be bound by the linked terms"); *Borukh v. Experian Info. Sols., Inc.*, No. 24-CV-6022(NRM)(JRC), 2025 WL 1220042, at *10 (E.D.N.Y. Apr. 18, 2025) (enforcing arbitration agreement where "the conspicuousness and placement of the Terms of Use hyperlink, along with the general design, provided plaintiff with reasonably conspicuous notice of the arbitration agreement); *Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265, 285-86 (E.D.N.Y. 2024) (holding that a conspicuous hyperlink to terms and conditions near a registration website provided adequate notice of an arbitration agreement); *Kern v. Stubhub, Inc.*, No. 24 Civ. 871(AT), 2024 WL 5283923, at *3 (S.D.N.Y. Dec. 17, 2024) (holding that an arbitration agreement was enforceable where a prominently displayed hyperlink "open[ed] the User Agreement, which contain[ed], in bolded and capitalized text, a prominent notice of the arbitration agreement").

Plaintiffs do not plausibly dispute the conspicuousness of the hyperlinked text. Contrary to their argument that "the hyperlinked text is unreasonably inconspicuous," Pls.' Opp'n at 10, by providing a hyperlink that immediately directed a mobile app user to a page containing the Arbitration Agreement and requiring that the user click a button affirmatively consenting to the Terms and Conditions, T20 provided adequate notice of the Arbitration Agreement. *Feld*, 442 F. Supp. 3d at 831 ("The Supreme Court has found contract terms enforceable where a consumer was directed elsewhere to review the relevant terms.") (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587-88, 111 S. Ct. 1522, 1525 (1991)); *see Meyer*, 868 F.3d at 79 (rejecting argument that "the location of the arbitration clause within the Terms and Conditions was itself a barrier to reasonable notice") (internal quotation omitted).

To this end, in *Feld*, the Court held that an arbitration agreement was sufficiently conspicuous where a hyperlink containing the terms of service next to a "sign up" button "put reasonably prudent users on inquiry notice." 442 F. Supp. 3d at 831; *see Zaltz v. JDATE*, 952 F. Supp. 2d 439, 454 (E.D.N.Y. 2013) ("As to the fact that plaintiff had to click on a hyperlink to view the Terms and Conditions of Service (rather than view the terms on the same page where she had to indicate her assent to the terms), the Court agrees with the *Fteja* court's analogizing this situation to cruise tickets—plaintiff was shown precisely where to access the Terms and Conditions of Service before she agreed to them . . . ."); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (holding that the Plaintiff was bound by the terms of an arbitration agreement where he "was informed of the consequences of his

15

assenting click and he was shown, immediately below, where to click to understand those consequences"). Accordingly, the Arbitration Agreement provided adequate notice of the requirement to arbitrate.

    2. <u>The Arbitration Agreement Encompasses the Claims Asserted</u>

   The Court must also consider "whether the scope of that agreement encompasses the claims at issue." *Holick*, 802 F.3d at 394 (citation omitted); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1033 (2d Cir. 2014) ("'[I]t is the language of the contract that defines the scope of disputes subject to arbitration.'") (quoting *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 289, 122 S. Ct. 754, 762 (2002)). When analyzing a "broad" arbitration agreement, there is a "presumption that the claims are arbitrable." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995); *see Bechtel do Brasil Construcoes Ltda. v. UEG Araucaria Ltda.*, 638 F.3d 150, 155 (2d Cir. 2011) (holding that ambiguities as to the scope of an arbitration clause must be "resolved in favor of arbitration").

   Although, as described above, neither Plaintiff purchased his own ticket for the T20 Tournament, the Arbitration Agreement applies to both. Both Plaintiffs gained entry to the T20 Tournament by using the T20 mobile app. *See* Ibrahim Decl. ¶ 7; Tahir Decl. ¶ 3; Jones Decl. ¶¶ 13-15, Ex. D. By entering the T20 Tournament by using the T20 mobile app, Plaintiffs agreed to the Terms and Conditions, which incorporate the Venue Rules. *See* Jones Decl. Ex. E. To this end, once logged into an account, a user has a further opportunity to click a hyperlink to the Terms and Conditions, providing the user with notice of the Arbitration Agreement and the

applicability of the Venue Rules.  *Id.* at Ex. G.  As discussed above, the Arbitration Agreement incorporates the Venue Rules.  *Id.* at Ex. A, which state, among other things, "Signs or banners may not block another guest's view, may not be affixed or hung from any stadium structure, and must otherwise comply with posted size restrictions."  *Id.* at Ex. B.  These prohibitions include "banners, large costumes/headwear, or flags," *id.*, and further state that "items may not be hung over the railing[s]" and that "signs and clothing unrelated to the Event, offensive, profane, political, commercial in nature, or otherwise deemed dangerous or inappropriate" are prohibited.  *Id.*  Each of Plaintiffs' causes of action stem from their presentation or attempted presentation of flags at the T20 Tournament.  Am. Compl. ¶¶ 76-99.  This conduct is arguably prohibited by the Venue Rules, and is therefore subject to the Arbitration Agreement.  To the extent that Plaintiffs assert that these policies or rules were applied disparately based upon the nation of the flag being displayed, *id.* at ¶¶ 17, 18, they will have the opportunity to pursue these claims in arbitration.

Given the preference for arbitration where an enforceable arbitration agreement exists, *see Hobby Lobby Stores, Inc.*, 535 F. Supp. 3d at 121, and because Plaintiffs assert claims stemming from their conduct in relation to their attendance at the T20 Tournament, their claims fall within the province of the Arbitration Agreement.  *See Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 32-33 (S.D.N.Y. 2023) (granting motion to compel arbitration even where issue of arbitrability was in question); *Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 13-CV-220-T-27TBM, 2015 WL 10844160, at *12 (M.D. Fla. Mar. 13, 2015)

17

(holding that the plaintiff's first amendment claim was arbitrable); *Mawing v. PNGI Charles Town Gaming, LLC*, No. 09-CV-68, 2010 WL 11520680, at *2 (N.D. W. Va. Aug. 18, 2010) (observing the "well-established presumption that any doubts regarding the scope of arbitrable issues are to be resolved in favor of arbitration" with respect to Section 1983 claims).

Finally, there is no merit to Plaintiff's assertion that *McDonald v. City of West Branch*, 466 U.S. 284, 104 S. Ct. 1799 (1984) provides "clear guidance that a defendant cannot compel arbitration of a § 1983 claim." Pls.' Opp'n at 16. To this end, the "Supreme Court has clearly stated that 'statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA.'" *Levine v. New York State Police*, No. 21-CV-1181(BKS)(CFH), 2022 WL 1987845, at *6 (N.D.N.Y. June 6, 2022) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S. Ct. 1647, 1652 (1991)). Moreover, *McDonald* is distinguishable as it addressed the enforcement and arbitrability of a collective bargaining agreement, which is not at issue here. Accordingly, the Arbitration Agreement encompasses Plaintiffs' claims and the motion to compel arbitration is granted.

C. **Stay of Proceedings**

Having concluded that the Arbitration Agreement applies, and because T20 has specifically requested to stay this action pending arbitration, *see* T20's Mem. at 25, a stay of this action pending arbitration is appropriate. *See Vassell v. SeatGeek, Inc.*, No. 24-CV-932(NCM)(JRC), 2025 WL 240912, at *15 (E.D.N.Y. Jan. 17, 2025) ("[A] district court must stay the judicial proceedings upon 'application of one of the

18

parties' where the asserted claims are 'referable to arbitration.'") (quoting 9 U.S.C. § 3); *Fadlelseed v. ABM Aviation JFK*, 751 F. Supp. 3d 207, 217 (E.D.N.Y. 2024) ("When all claims have been referred to arbitration and a stay is requested, the Court *must* grant the stay.") (citing *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015)) (emphasis in original). Accordingly, this matter is stayed pending completion of arbitration.

## V.   CONCLUSION

For the reasons set forth herein, Defendant T20's Motion to Compel Arbitration is granted and this matter is stayed pending completion of arbitration.

Dated:   Central Islip, New York
         September 9, 2025

**SO ORDERED**

s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge

19